UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEVIN KING,

    Plaintiff,

v                                                                                    Case No. 4:02-cv-141

CHUCK ZAMIARA, CURTIS CHAFFEE,                          Hon. Wendell A. Miles
BONNIE LEWIS, SHARON WELLS,
MICHAEL SINGLETON, MARY BERGHUIS,
TERRY SWIFT and DAN BOLDEN,
in their individual and official capacities,

    Defendants.

_____/

ORDER ON DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S
JUNE 29, 2006 REPORT AND RECOMMENDATION


    This is a *pro se* civil rights action filed by a Michigan prisoner. On June 29, 2006, United States Magistrate Judge Ellen S. Carmody issued a Report and Recommendation ("R & R") recommending that the motion for dismissal filed by the defendants based on qualified immunity (docket nos. 49, 50) be denied. These defendants have filed objections to the R & R, to which plaintiff has responded.

    The court, having reviewed the R & R filed by the United States Magistrate Judge in this action, having reviewed the file in this matter, and having reviewed the defendants' objections, rejects the conclusion reached by the Magistrate Judge and instead concludes, for the reasons to follow, that defendants are entitled to qualified immunity.

**Discussion**

Plaintiff is currently incarcerated in Michigan's Marquette Branch Prison. The actions about which he complains and which are currently before this court on remand from the United States Court of Appeals for the Sixth Circuit involve plaintiff's transfer from Michigan's Brooks Correctional Facility ("LRF"), located in Muskegon, Michigan, in Michigan's lower peninsula, to the Chippewa Correctional Facility ("URF"), located in Michigan's upper peninsula. In his amended complaint, plaintiff alleges that on May 12, 2000, five days before his transfer from LRF to URF, his security classification was increased from a custody level II to a level III. The sole issue currently before this court is whether the defendants are entitled to qualified immunity for their actions, and, more specifically, whether increasing an inmate's security level in retaliation for his participation in protected activity under the First Amendment was a clearly established constitutional violation in May, 2000. King v. Zamiara, No. 04-1366, 2005 WL 2496478 at **5 n.3 (6th Cir. Oct. 7, 2005).

In her R & R, the Magistrate Judge acknowledged that she had not located authority directly addressing this issue in the context of the present fact situation. The Magistrate Judge nonetheless concluded that "as of May 2000 the law was sufficiently clear that a reasonable prison official would have understood that increasing a prisoner's security level would constitute an adverse action capable of deterring a person of ordinary firmness from continuing to engage in protected conduct." R & R at 7. The Magistrate Judge therefore concluded that the defendants were not entitled to qualified immunity "as the right in question was clearly

established as of May 2000." Id. at 7.

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 125 S.Ct. 596, 599 (2004). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Id. The salient question is whether the state of the law at the time of the conduct gave the official "fair warning" that the alleged conduct was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 2516 (2002). "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." Brosseau, 543 U.S. 194, 125 S.Ct. at 599. In an obvious case, fair warning may be found even in the absence of a body of relevant case law. Id. However, where the area "is one in which the result depends very much on the facts of each case[,]" the law is not clearly established. Id.

The Sixth Circuit has repeatedly referred to the decision in Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999) decision as "clarifying the law concerning retaliation claims." Thaddeus-X v. Wozniak, No. 99-1720, 2000 WL 712383, *2 (6th Cir. 2000) (citations omitted). However, while recognizing that the legal standards are clear, this same court has also recognized that "in most cases, the question of whether an alleged retaliatory action poses a

3

sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law[.]" Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002). This is a recognition that such cases are highly fact-specific.

In Thaddeus-X v. Blatter, decided in 1999, the court held that harassment, physical threats, cold meals, and transfer to the area of a prison used to house mentally disturbed inmates, especially combined with the unsanitary conditions there, was likely to have a strong deterrent effect. 175 F.3d at 398-399. In Herron v. Harrison, 203 F.3d 410 (6th Cir. 2000), decided in February, 2000, the court held that placing an inmate in administrative segregation was conduct sufficiently adverse to establish a retaliation claim. 203 F.3d at 416. In Bell v. Johnson, 308 F.3d 594, decided in October, 2002 – after the events in question in the present case – the court held that the defendants' alleged retaliatory actions, which included two shakedowns of plaintiff's cell and the concomitant confiscation of his legal papers and medical diet snacks, could deter a person of ordinary firmness from engaging in protected conduct. 308 F.3d at 605. Even more recently, in Scott v. Churchill, 377 F.3d 565 (6th Cir. 2004), the court held that an inmate's right to be free from retaliation, in the form of the issuance of a false major misconduct ticket, against the exercise of his First Amendment rights was clearly established. None of these cases, including those decided after the time of the conduct in this case, is directly on point.

On the other hand, before May, 2000 – the time of the conduct at issue in this case – Sixth Circuit panels had repeatedly held that a transfer from one prison to another did not constitute impermissible retaliation for purposes of a First Amendment claim. Ward v. Dyke, 58

F.3d 271, 274-75 (6th Cir.1995); Goddard v. Kentucky Dept. of Corrections, Nos. 99-5348/5971, 2000 WL 191758, at *3 (6th Cir. Feb. 7, 2000); Goss v. Myers, No. 99-5544, 2000 WL 125905, at *2 (6th Cir. Jan. 28, 2000); Mandela v. Campbell, No. 97-5712, 1999 WL 357825, at *3 (6th Cir. May 26, 1999); Herron v. Campbell, Nos. 99-5121/5123, 1999 WL 1045158, at *1 (6th Cir. Nov. 9, 1999).

This court is aware of no case which squarely governs the situation presented here, where in order to facilitate the alleged retaliatory transfer of a prisoner, officials raise the prisoner's security level. Because the result in prisoner retaliation cases is highly dependent on the facts of each case, and because the state of the law at the time of the conduct in question did not give the defendants fair warning that their alleged conduct was unconstitutional, the law is not clearly established and the defendants are entitled to qualified immunity.

## **CONCLUSION**

The motion for dismissal filed by the defendants based on qualified immunity is GRANTED. The court therefore grants dismissal in favor of the defendants on plaintiff's claims against them.

So ordered this 22nd day of August, 2006.

    /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge