UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN KING,

       Plaintiff,                            Hon. Robert Holmes Bell

v.                                             Case No. 4:02 CV 141

CHUCK ZAMIARA, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment, (dkt. #129); Defendants' Motion for Summary Judgment, (dkt. #131); and Plaintiff's Motion to Amend Complaint, (dkt. #137). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's Motion for Partial Summary Judgment, (dkt. #129), be **granted in part and denied in part**; Defendants' Motion for Summary Judgment, (dkt. #131), be **granted in part and denied in part**; and Plaintiff's Motion to Amend Complaint, (dkt. #137), be **denied**.

## BACKGROUND

Plaintiff initiated this action on July 26, 2002, against eight individuals alleging various claims of retaliation, conspiracy, and deprivation of due process. (Dkt. #1, 11). One of the claims advanced by Plaintiff was that in May 2000 his security classification was increased from Level II to Level III in retaliation for participating in a class action lawsuit against the Michigan Department of Corrections and providing legal assistance to other inmates.

On April 1, 2003, Defendants filed a motion for summary judgment. (Dkt. #19). On January 23, 2004, the undersigned recommended that Defendants' motion be granted and Plaintiff's action dismissed. (Dkt. #28). On March 5, 2004, the Honorable Wendell A. Miles adopted the Report and Recommendation and dismissed Plaintiff's action. (Dkt. #30).

Plaintiff appealed this determination to the Sixth Circuit which granted in part his appeal. *King v. Zamiara*, 150 Fed. Appx. 485 (6th Cir., Oct. 7, 2005) (hereinafter referred to as *King I*). Specifically, the court affirmed the dismissal of Plaintiff's action except for Plaintiff's claim that his security level was increased in retaliation for engaging in constitutionally protected conduct. *Id.* at 491-96. With respect to this particular claim, the court found that there exist genuine issues of material fact concerning the causation element thereby precluding summary judgment. *Id.* Accordingly, the court reversed the district court's determination as to that particular claim and remanded the matter to determine whether Defendants were entitled to qualified immunity. *Id.* at 490.

On June 29, 2006, the undersigned recommended that Defendants were not entitled to qualified immunity. (Dkt. #57). The Honorable Wendell A. Miles rejected this recommendation and dismissed Plaintiff's action on the ground that Defendants were entitled to qualified immunity. (Dkt. #66). The Sixth Circuit found that Defendants were not entitled to qualified immunity and remanded the matter for "further proceedings." (Dkt. #73). This decision is hereinafter referred to as *King II*. Plaintiff now moves for summary judgment on the question of liability only. Defendants move for summary judgment and dismissal of this matter. Plaintiff also seeks to amend his complaint to add a new defendant to this action.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative

evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

**Defendants' Motion for Summary Judgment**

Defendants assert that they are entitled to summary judgment because: (1) they played no role in the decision to increase Plaintiff's security level, (2) Plaintiff's claim "has already been satisfied," and (3) they are entitled to qualified immunity. As discussed below, the Court finds rationales (2) and (3) to be without merit, but concludes that three Defendants are entitled to summary judgment on the ground that Plaintiff has presented no evidence that they were involved in the decision to increase his security level.

**I.        Satisfaction**

Defendants assert that Plaintiff "brought the same exact claim in the *Cain* proceedings that he is bringing in this federal action." Defendants further assert that since Plaintiff settled this particular claim they are entitled to summary judgment in this matter because "Plaintiff's claim is barred by accord and satisfaction."

An accord is an agreement between parties to give and accept, in settlement of a claim, something other than that which is claimed to be due. *See Faith Reformed Church v. Thompson*, 639 N.W.2d 831, 833 (Mich. Ct. App. 2001). Satisfaction is the performance or execution of this agreement. *Id.* To establish that a claim is barred by accord and satisfaction, the defendant must demonstrate (1) its good-faith dispute of (2) an unliquidated claim of the plaintiff, (3) its conditional tender of money in satisfaction of the claim, and (4) the plaintiff's acceptance of the tender (5) while fully informed of the condition. *Id.* at 833-34.

In support of this defense, Defendants have submitted an exhibit which indicates that on October 27, 2003, Plaintiff entered into a stipulation to resolve a January 16, 1999 motion to hold the Michigan Department of Corrections in contempt. (Dkt. #132, Exhibit 6). As Plaintiff correctly asserts, however, Defendants have failed to demonstrate that the retaliation claim presently at issue was resolved as part of this stipulation. Defendants have submitted a supplemental pleading filed in state court by Plaintiff (and others) in which Plaintiff asserts that his security level was increased in May 2000 for retaliatory reasons. (Dkt. #132, Exhibit 5). While this pleading appears to assert the same retaliation claim presently at issue, it does not relate to the January 16, 1999 contempt motion that was the subject of the aforementioned stipulation. As this supplemental pleading clearly states, it relates to a separate motion for contempt filed by Plaintiff (and others) on November 9, 1999. Defendants have submitted

no evidence that Plaintiff settled the matters addressed in the November 9, 1999 motion. Accordingly, the Court recommends that Defendants' motion for summary judgment based on the theory of accord and satisfaction be **denied**.

### II.       Qualified Immunity

Defendants assert that they are entitled to qualified immunity. As previously noted, the Sixth Circuit resolved this question in *King II*, concluding that Defendants were not entitled to qualified immunity. The Court recommends, therefore, that Defendants' motion for summary judgment on the basis of qualified immunity be **denied**.

### III.       Personal Involvement

Defendants also move for summary judgment on the ground that they were not involved in the decision to increase Plaintiff's security level. Specifically, Defendants assert that the decision to increase Plaintiff's security level was made solely by Nick Ludwick, another Michigan Department of Corrections official. The Court agrees as to three Defendants, but concludes that with respect to the remaining Defendants there exist genuine factual disputes concerning their involvement in the circumstances giving rise to Plaintiff's remaining retaliation claim.

As is well recognized, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). In other words, liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active

unconstitutional behavior. The claim presently at issue concerns the increase in Plaintiff's security level for allegedly retaliatory purposes. To maintain such a claim against a particular defendant, Plaintiff must be able to establish that he or she was actively involved in the decision to increase his security level.

### A.     Defendant Zamiara

In support of his argument that he was not involved in the decision to increase Plaintiff's security level, Defendant Zamiara relies on the following evidence. In his deposition, Zamiara testified that because Plaintiff was on the "CFA hold list," he was not authorized to approve Plaintiff's transfer without the approval of either Defendant Bolden or Nick Ludwick. (Dkt. #132, Exhibit 22 at 22). Zamiara further testified that Ludwick "ultimately made the decision" to increase Plaintiff's security level. (Dkt. #132, Exhibit 22 at 42).

This evidence hardly establishes that Defendant Zamiara was not involved in the decision to increase Plaintiff's security level. While this evidence suggests that Zamiara was unable to *unilaterally* increase Plaintiff's security level, it does not establish that Zamiara played no role in the decision to increase Plaintiff's security level. Moreover, as Plaintiff correctly notes, Ludwick testified at his deposition that Defendant Zamiara played an active role in the decision to increase Plaintiff's security level. (Dkt. #140, Exhibit 2 at 18-20). As Ludwick testified, "it would have been Mr. Zamiara's determination that Mr. King would be better suited at a higher level of custody." (Dkt. #140, Exhibit 2 at 19). Ludwick's testimony in this regard is supported by a 2003 affidavit executed by Zamiara, in which Zamiara asserts that *he* "believed" that Plaintiff was engaging in "manipulative behavior" which merited an increase in his security level. (Dkt. #130, Exhibit 34 at ¶ 9).

Plaintiff has also submitted a copy of a Transfer Order, dated May 12, 2000, which provides that Plaintiff was to be transferred to the Chippewa facility and increased from Security Level II to Security Level III. (Dkt. #130, Exhibit 17). According to this document, this transfer, pursuant to which Plaintiff would be subjected to an increase in security classification, was approved by "C. Zamiara."

Plaintiff has demonstrated that there exists a genuine factual dispute concerning Defendant Zamiara's involvement in the decision to increase his security level. Accordingly, the Court recommends that Defendant Zamiara's motion for summary judgment on the ground that he was not involved in the decision to increase Plaintiff's security level be **denied**.

B.  Defendant Berghuis

Defendant Berghuis asserts that she was not involved in the decision to increase Plaintiff's security classification. Defendant Berghuis cites to no evidence in support of her assertion. Plaintiff has presented evidence, however, that raises a genuine factual dispute as to Defendant Berghuis' involvement in the decision to increase his security classification.

Plaintiff has submitted a copy of a May 12, 2000 Transfer Order, which provides that Plaintiff was to be transferred to the Chippewa facility and housed at Security Level III. (Dkt. #130, Exhibit 17). This Transfer Order, pursuant to which Plaintiff would be subjected to an increase in security classification, appears to be authorized by Defendant Berghuis as evidenced by what appears to be her signature. In her deposition, Defendant Berghuis acknowledged that she signed the Order authorizing Plaintiff's transfer and increase to Security Level III. (Dkt. #140, Exhibit 9 at 46).

The evidence identified by Plaintiff, when contrasted with the complete absence of evidence from Defendant Berghuis, creates a genuine dispute as to Berghuis' involvement in the decision to increase Plaintiff's security level. The Court, therefore, recommends that Defendant Berghuis' motion for summary judgment on the ground that she was not involved in the decision to increase Plaintiff's security level be **denied**.

### C. Defendant Chaffee

Defendant Chaffee asserts that he was not involved in the decision to increase Plaintiff's security classification. Defendant Chaffee cites to no evidence in support of his assertion. Plaintiff has presented evidence, however, that raises a genuine factual dispute as to Defendant Chaffee's involvement in the decision to increase his security classification.

Plaintiff has submitted a May 8, 2000 e-mail exchange between Defendants Chaffee and Zamiara, in which Chaffee stated that Deputy Warden Harry requested that Plaintiff be transferred to another Level II facility. (Dkt. #130, Exhibit 18). According to Defendant Chaffee, Deputy Warden Harry made this request because Plaintiff was perceived to be instigating problems within the facility. In response to this message, Defendant Zamiara instructed Chaffee to instead "send [Plaintiff] to [the Chippewa facility] as a level III." Defendant Chaffee was further instructed to indicate that the reason for the security classification increase was that Plaintiff was "manipulating others to create unrest." In his deposition, Defendant Chaffee acknowledged that he completed the Security Classification Screen Review which led to the increase in Plaintiff's security classification. (Dkt. #140, Exhibit 6 at 14-17). Specifically, Defendant Chaffee testified that he completed this form to indicate that Plaintiff's security classification was to be increased from Level II to Level III. (Dkt. #140, Exhibit 6 at 14-17). Plaintiff

has submitted a copy of a Transfer Order, dated May 12, 2000, which provides that Plaintiff was to be transferred to the Chippewa facility and housed at Security Level III. (Dkt. #130, Exhibit 17). Defendant Chaffee appears to have signed this document signifying that he prepared the Transfer Order.

The evidence identified by Plaintiff, when contrasted with the complete absence of evidence from Defendant Chaffee, creates a genuine dispute as to Chaffee's involvement in the decision to increase Plaintiff's security level. The Court, therefore, recommends that Defendant Chaffee's motion for summary judgment on the ground that he was not involved in the decision to increase Plaintiff's security level be **denied**.

### D. Defendant Wells

Defendant Wells asserts that she was not involved in the decision to increase Plaintiff's security classification. Defendant Wells cites to no evidence in support of her assertion. Plaintiff has presented evidence, however, that raises a genuine factual dispute as to Defendant Wells' involvement in the decision to increase his security classification.

Plaintiff has submitted a copy of a May 12, 2000 Security Classification Screen Review, which identifies his "True Security Level" as "III" and his "Actual Placement Level" as "III." (Dkt. #130, Exhibit 16). This document indicates that it was "approved by Wells AADW." At her deposition, Defendant Wells acknowledged that she signed this document. (Dkt. #140, Exhibit 7 at 25-26).

The evidence identified by Plaintiff, when contrasted with the complete absence of evidence from Defendant Wells, creates a genuine dispute as to Wells' involvement in the decision to increase Plaintiff's security level. The Court, therefore, recommends that Defendant Wells' motion for

summary judgment on the ground that she was not involved in the decision to increase Plaintiff's security level be **denied**.

### E. Defendant Singleton

Defendant Singleton asserts that he was not involved in the decision to increase Plaintiff's security classification. Defendant Singleton cites to no evidence in support of his assertion. Plaintiff has presented evidence, however, that raises a genuine factual dispute as to Defendant Singleton's involvement in the decision to increase his security classification.

Plaintiff has submitted a copy of a May 8, 2000 Security Classification Screen Review, which identifies his "True Security Level" as "III" and his "Actual Placement Level" as "III." (Dkt. #130, Exhibit 16). This document further states that Plaintiff "needs [a] higher level of security." This document appears to have been signed by Defendant Singleton, signifying that he approved of the determination to increase Plaintiff's security level. At his deposition, Defendant Singleton acknowledged that he signed this document. (Dkt. #140, Exhibit 8 at 14-15).

The evidence identified by Plaintiff, when contrasted with the complete absence of evidence from Defendant Singleton, creates a genuine dispute as to Singleton's involvement in the decision to increase Plaintiff's security level. The Court, therefore, recommends that Defendant Singleton's motion for summary judgment on the ground that he was not involved in the decision to increase Plaintiff's security level be **denied**.

F.     Defendant Bolden

Defendant Bolden asserts that he was not involved in the decision to increase Plaintiff's security level. In his deposition, Defendant Bolden testified that he was not consulted concerning Plaintiff's "placement" in May 2000. (Dkt. #132, Exhibit 10 at 14). Bolden stated "[t]hat was a function delegated to Nick Ludwick, who was the classification director." (Dkt. #132, Exhibit 10 at 14). In response, Plaintiff asserts that Bolden, in his supervisory capacity, is liable for the decision (made by other prison officials) to increase Plaintiff's security level because Bolden approved of, or failed to remedy, this allegedly unlawful decision.

As previously noted, liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, but must instead be based upon active unconstitutional behavior. As is well recognized, to justify supervisory liability Plaintiff "must prove that the defendant, as a supervisory official, is *personally* responsible for the alleged unconstitutional actions that caused his injury." *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005) (citation omitted). Plaintiff must demonstrate that the supervisory official "condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct." Plaintiff must establish that the official "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Id.* (citation omitted). Liability cannot attach, however, where the supervisory official only becomes aware of the allegedly illegal conduct "after the fact." *See, e.g., Sarr v. Martin*, 53 Fed. Appx. 760, 761-62 (6th Cir., Dec. 16, 2002) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Kubik v. Brown*, 979 F.Supp. 539, 548 (W.D. Mich. 1997); *Copenhaver-Nelson v. Caruso*, 2006 WL 696490 at *6 (W.D. Mich., Jan. 25, 2006).

In support of his position that Defendant Bolden should be held liable in this matter, Plaintiff relies on an October 23, 2000 letter authored by Bolden. (Dkt. #140, Exhibit #11). This letter,

dated more than four months *after* the decision to increase Plaintiff's security level was made, does not establish that Bolden had any involvement in this decision. At most, this letter reveals that Defendant Bolden became aware, after the fact, of the circumstances giving rise to the present claim. Such is an insufficient basis, however, on which to premise liability in a § 1983 action.

As noted above, a party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo*, 398 F.3d at 761. To prevail on his claim against Defendant Bolden, Plaintiff must establish (in part) that Bolden actively participated in the decision to increase his security classification. Plaintiff has had ample opportunity to conduct discovery, but has failed to present evidence demonstrating that Defendant Bolden was involved in the decision to increase his security classification. Accordingly, the Court recommends that Defendant Bolden's motion for summary judgment be **granted**.

        G.      Defendant Swift

As of May 2000, Defendant Swift was the transfer coordinator at the Chippewa Correctional Facility, the facility to which Plaintiff was transferred that month. (Dkt. #132, Exhibit 22 at 45). Defendant Swift asserts that in this capacity she played no role in the decision to increase Plaintiff's security level. In support of his assertion that Swift is liable in this matter, Plaintiff relies on a single e-mail exchange between Defendants Zamiara and Berghuis, a copy of which was forwarded to Defendant Swift. (Dkt. #130, Exhibit 20).

This e-mail exchange does not indicate that Defendant Swift played any role in the decision to increase Plaintiff's security level. As the e-mail exchange states, it was forwarded to Swift

so that "she will have the background" on the circumstances involving Plaintiff's transfer and security classification increase. Moreover, this e-mail exchange was not forwarded to Swift until June 14, 2000, almost one month after Plaintiff was transferred to the Chippewa facility and placed in Level III confinement. In short, this e-mail exchange fails to establish that Defendant Swift was involved in the decision to increase Plaintiff's security classification.

Because Plaintiff has failed to present evidence demonstrating that Defendant Swift was involved in the decision to increase his security classification, the Court recommends that Defendant Swift's motion for summary judgment be **granted**.

### H. Defendant Lewis

Defendant Lewis asserts that she is entitled to summary judgment because she was not involved in the decision to increase Plaintiff's security classification. In response, Plaintiff has identified no evidence that Defendant Lewis was involved in this decision, but instead asserts that he does not contest Lewis' motion. (Dkt. #140 at 5-6). Accordingly, the Court recommends that Defendant Lewis' motion for summary judgment be **granted**.

**Plaintiff's Motion for Summary Judgment**

The only claim remaining in this matter is Plaintiff's claim that his security level was increased in retaliation for engaging in constitutionally protected conduct. Plaintiff asserts that he is entitled to summary judgment because there do not exist any factual disputes concerning this claim.

The elements of a First Amendment retaliation claim are well known: (1) the plaintiff was engaged in constitutionally protected conduct, (2) the plaintiff suffered adverse action which would deter

a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

        A.      Protected Conduct

In *King I*, the Sixth Circuit concluded that with respect to the retaliation claim in question, Plaintiff had engaged in two distinct forms of protected conducted. *King*, 150 Fed. Appx. at 491-93. Specifically, the court found that Plaintiff's participation in the *Cain* class action lawsuit constituted protected conduct. *Id.* at 492. The court further determined that Plaintiff's conduct of providing legal assistance to other inmates constituted protected conduct. *Id.* at 492-93.

Plaintiff moves for summary judgment as to this particular element of the analysis. Defendants have not opposed this aspect of Plaintiff's motion. Considering the Sixth Circuit's determination on the subject, as well as the evidence and authority identified by Plaintiff in his brief in support of the present motion, the Court recommends that Plaintiff's motion for summary judgment be **granted** as to this particular element of the analysis.

        B.      Adverse Action

In *King I*, the Sixth Circuit concluded that "[i]ncreasing King's custody security level was an adverse action because the result of more restrictions and fewer privileges could deter a person of ordinary firmness from engaging in protected conduct." *Id.* at 494. Plaintiff moves for summary judgment as to this particular element of the analysis. Defendants have not opposed this aspect of

Plaintiff's motion. Considering the Sixth Circuit's determination on the subject, as well as the evidence and authority identified by Plaintiff in his brief in support of the present motion, the Court recommends that Plaintiff's motion for summary judgment be **granted** as to this particular element of the analysis.

### C. Causation

Plaintiff asserts that he is entitled to summary judgment on the issue of causation because "[o]n the sole remaining issue [causation], an issue in which Defendants bear the burden of proof, the evidence conclusively establishes that, not only was King's protected conduct one of the reasons that motivated the adverse conduct, it was the only reason." (Dkt. #130 at 17-18).

The Court disagrees with Plaintiff in several respects. First, *Plaintiff* bears the burden to establish that Defendants unlawfully retaliated against him. This burden includes demonstrating the requisite causal connection between Plaintiff's protected conduct and the adverse action to which he was subjected. Moreover, while Plaintiff has articulated a persuasive argument in support of his position, to provide Plaintiff the relief he seeks would require the Court to interpret the evidence in the light most favorable to Plaintiff, the moving party, contrary to the relevant legal standard. Furthermore, the Court notes that the record contains evidence, which if believed and/or interpreted in Defendants' favor, supports Defendants' argument that Plaintiff's security level was properly increased because of his manipulative and disruptive activities. (Dkt. #130, Exhibit 6 at 29-31, 40-41; Dkt. #130, Exhibit 7 at 34-38, 47-71; Dkt. #130, Exhibits 17-18; Dkt. #130, Exhibit 19 at 27, 37-39, 75-87; Dkt. #130, Exhibit 20; Dkt. #130, Exhibit 21 at 46-47; Dkt. #130, Exhibits 23, 27, 31, 33-34; Dkt. #140, Exhibits 10-12).

The Court, therefore, recommends that Plaintiff's motion for summary judgment be **denied** as to this particular element of the analysis.

**Plaintiff's Motion to Amend Complaint**

As alluded to above, Defendants assert that they are entitled to summary judgment because they were not involved in the decision to increase Plaintiff's security level. Defendants instead claim that Nick Ludwick was solely responsible for the increase in Plaintiff's security level. In response, Plaintiff has moved to amend his complaint to add Ludwick as a defendant in this matter. For the reasons discussed below, the Court recommends that Plaintiff's motion be denied as futile.

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend a complaint shall be "freely given when justice so requires." The factors relevant when considering a motion to amend include: (1) undue delay in filing, (2) lack of notice to the opposing party, (3) bad faith by the moving party, (4) repeated failure to cure deficiencies by previous amendments, (5) undue prejudice to the opposing party, and (6) futility of amendment. *See Wade v. Knoxville Utilities Board*, 259 F.3d 452, 458 (6th Cir. 2001). A motion to amend a complaint may be denied when such would be futile. *See Midkiff v. Adams County Regional Water District*, 409 F.3d 758, 767 (6th Cir. 2005).

Almost *nine years* after the events giving rise to the claim in question, Plaintiff seeks to amend his complaint to assert claims against Nick Ludwick, who in May 2000 served as Classification Director for the Michigan Department of Corrections. Plaintiff asserts that his motion to amend should be granted because he did not discover Ludwick's potential involvement in this matter until October 2008, when Defendant Zamiara asserted during his deposition that Ludwick was responsible for increasing Plaintiff's security level. Defendants counter that Plaintiff's proposed amendment would be futile because the statute of limitations expired long ago as to any claim against Ludwick.

When determining the limitations period applicable in a § 1983 action, courts must borrow the statue of limitations which governs personal injury actions in the state in which the § 1983

action was initiated.  *See Owens v. Okure*, 488 U.S. 235, 239-41 (1989); *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003).  Where the relevant state law provides multiple statutes of limitation for personal injury actions, courts are to apply the "general or residual statute for personal injury actions." *Okure*, 488 U.S. at 249-50; *Banks*, 344 F.3d at 553.  Michigan law articulates multiple statutes of limitation applicable to personal injury actions.  *See* Mich. Comp. Laws § 600.5805.  Accordingly, the limitations period applicable in the present action is three years, as articulated in Mich. Comp. Laws § 600.5805(10).  *See Hardin v. Straub*, 490 U.S. 536, 540 (1989); *Jones v. City of Hamtramck*, 905 F.2d 908, 909 (6th Cir. 1990).[1]

While the Court looks to state law to identify the applicable statute of limitations, federal law must be applied when determining when the relevant limitations period begins to run.  *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003).  Under federal law, a civil rights claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007).  A plaintiff has reason to know of his injury when he "should have discovered it through the exercise of reasonable diligence."  *Id*.  Thus the question is not when did Plaintiff *actually* learn of Ludwick's potential involvement in this matter, but when Plaintiff, through the exercise of reasonable diligence, *could* have learned of such.

As Defendants correctly observe, documents attached to Plaintiff's complaint indicate Ludwick's potential involvement in the events giving rise to Plaintiff's claim that his security level was increased for retaliatory reasons.  One of these documents is a copy of an e-mail exchange between Defendants Zamiara and Chaffee concerning the increase in Plaintiff's security level. (Dkt. #1, Exhibit

---

[1] The *Hardin* and *Jones* courts identified the relevant provision as Mich. Comp. Laws § 600.5805(8).  This particular provision is presently codified at Mich. Comp. Laws § 600.5805(10).

H; Dkt. #11, Exhibit H). This document contains the following information "CC: Nick Ludwick; Terry L. Swift." Another document is a copy of an October 23, 2000 letter from Defendant Bolden to Plaintiff which also concerns the increase in Plaintiff's security level. (Dkt. #1, Exhibit P; Dkt. #11, Exhibit P). This document contains the following information, "cc: Nick Ludwick, Classification Director."

These documents, in Plaintiff's possession no later than July 26, 2002, the date on which this action was initiated, put Plaintiff on notice of Ludwick's potential involvement in this matter. There is no evidence that Plaintiff undertook any attempt to investigate Ludwick's involvement in this matter or that any such efforts were thwarted or impaired. While Plaintiff may not have actually learned of Ludwick's potential involvement until October 2008, as he alleges, he *could* have learned of such long ago through the exercise of reasonable diligence.

The Court certainly understands Plaintiff's frustration that Defendants are now asserting that Ludwick, a non-party, is responsible for increasing Plaintiff's security level. Nevertheless, Plaintiff knew or had reason to know of Ludwick's potential involvement in this matter no later than July 2002, but chose not to investigate the matter. The Court cannot excuse Plaintiff's lack of diligence simply because such may inure to Defendants' benefit. In sum, the Court recommends that Plaintiff's motion to amend his complaint be **denied** as futile on the ground that the statute of limitations long ago expired as to any claim against Nick Ludwick concerning Plaintiff's claim that his security classification was increased in May 2000 for retaliatory reasons.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Plaintiff's Motion to Amend Complaint, (dkt. #137), be **denied**. The undersigned also recommends that Defendants' Motion for Summary Judgment, (dkt. #131), be **granted in part and denied in part**. Specifically, the Court recommends that Plaintiff's claims against Defendants Bolden, Swift, and Lewis be dismissed, but that Defendants' motion otherwise be denied. The undersigned further recommends that Plaintiff's Motion for Partial Summary Judgment, (dkt. #129), be **granted in part and denied in part**. Specifically, with respect to this latter recommendation, the undersigned recommends that Plaintiff is entitled to summary judgment as to the first two prongs of the retaliation analysis (i.e., protected conduct and adverse action), but that summary judgment as to the third prong of the retaliation analysis (i.e., causation) is inappropriate because genuine factual disputes remain concerning such.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: March 23, 2009

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge